IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL ANTHONY COLEMAN, | ) | CASE NO. 5:22-CV-00364-JRA |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| | ) | JENNIFER DOWDELL ARMSTRONG |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant, | | |

## I.    INTRODUCTION

Plaintiff Michael Anthony Coleman filed a Complaint against the Commissioner of Social Security (Commissioner) seeking judicial review of the Commissioner's decision denying disability insurance benefits ("DIB"). (ECF Doc. 1). The District Court has jurisdiction under 42 U.S.C. §§ 1383(c) and 405(g). Pursuant to Local Civil Rule 72.2, this matter was referred to a magistrate judge for preparation of a Report and Recommendation, and was subsequently reassigned to me pursuant to General Order No. 2022-14. For the reasons set forth below, it is RECOMMENDED that the Court OVERRULE Coleman's Statement of Errors and AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

On October 11, 2019, Coleman filed an application for DIB, alleging a disability as of September 13, 2019. (ECF Doc. 4, Page ID#29). Coleman's application was denied initially and

1

upon reconsideration, and Coleman requested a hearing before an administrative law judge ("ALJ"). (ECF Doc. 4, Page ID#226-28). On December 8, 2020, an ALJ held a hearing, during which Coleman, represented by counsel, and an impartial vocational expert testified. (Tr. 109-45). On March 2, 2021, the ALJ issued a written decision finding Coleman was not disabled. (ECF Doc. 4, Page ID#26). The ALJ's decision became final on January 6, 2022, when the Appeals Council declined further review. (ECF Doc. 4, Page ID#17-22)

On March 5, 2022, Coleman filed his Complaint to challenge the Commissioner's final decision. (ECF Doc. 1). The parties have completed briefing in this case. (ECF Doc. Nos. 7, 8, 10). Coleman asserts the following assignments of error:

1. The appointment of Andrew Saul as Commissioner of the Social Security Administration violated the separation of powers. As such, the decision in this case by an ALJ who derived his authority from Andrew Saul was constitutionally defective.

2. The ALJ erred when he failed to include the need to elevate legs in the RFC as necessary due to Coleman's pitting edema and failed to find the opinions of Dr. Samett Yonan persuasive.

3. The ALJ erred when he failed to properly consider Coleman's symptoms, including pain, in accordance with Social Security Ruling 16-3p.

(ECF Doc. 7, Page ID# 1590).

III.    BACKGROUND

A. Personal, Educational, and Vocational Evidence

Coleman was born on July 26, 1974 and was 45 years old on the alleged disability onset date. (Tr. 22). Coleman graduated from high school, and he had previously worked as a blender, vinyl technician, and foreman. (Tr. 118-22).

### B.  Relevant Medical Opinion Evidence

#### 1.  *State Agency Medical Consultants*

##### a.  <u>Rohini Mendoca, MD</u>

On December 31, 2019, Dr. Rohini Mendoca evaluated Coleman's physical residual functional capacity and opined that Coleman could perform a reduced range of light work. (Tr. 156-158). Specifically, Dr. Mendoca noted that Coleman could occasionally lift and/or carry up to 20 pounds, frequently lift and/or carry 20 pounds, stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, and sit (with normal breaks) for a total of 6 hours in an 8-hour workday. (Tr. 156). In addition, Dr. Mendoca indicated that Coleman needed to avoid concentrated exposure to environmental limitations such as extreme cold, extreme heat, wetness, humidity, vibration, and hazards. (Tr. 157).

##### b.  <u>Dr. Leon Hughes, MD</u>

On reconsideration, Dr. Leon Hughes also reached similar conclusions to Dr. Mendoca. (Tr. 169-71).  Dr. Hughes concluded that the Coleman could perform work at the light level of exertion. (Tr. 169-71). Specifically, he noted the same occasional and frequenting lifting, standing/walking, and sitting limitations as Dr. Mendoca. (Tr. 169). Further, he suggested that Coleman avoid even moderate exposure to hazards. (Tr. 170).

#### 2.  *Pain Management Physician - Sameh Yonan, M.D.*

On September 13, 2019, Dr. Sameh Yonan wrote a letter indicating that Coleman was experiencing generalized pain and severe fatigue in spite of his medical regimen. (Tr. 252) At that time, Dr. Yonan opined that Coleman would be unable to work for at least three months in order to address issues stemming from liver disease and musculoskeletal problems. (Tr. 252).

On November 8, 2019, Dr. Yonan filled out a form for Coleman's work. (Tr. 1279). He stated that he believed that Coleman would be unable to perform his stated job duties. (Tr. 1279). In addition, he opined that Coleman could not lift over 10 pounds and would have a medical flare-up at least once a month that would last 24-28 hours and preclude him from standing, sitting, or bending. (Tr. 1281). He concluded that a return-to-work date could not be determined at that time as Coleman's need for leave was indefinite. (Tr. 1281).

In response to a request for medical information regarding an initial disability claim pending with the Social Security Administration, Dr. Yonan filled out a form indicating that Coleman had liver cirrhosis, spinal stenosis lumbar with neurogenic claudication, intervertebral disc disorders with radiculopathy in the lumbar region, radiculopathy, and intervertebral disc degeneration. (Tr. 460). He opined that Coleman could not work at that time. (Tr. 461).

### C.  Relevant Hearing Testimony

#### 1.  *Michael Anthony Coleman*

Coleman testified at the hearing. (Tr. 115-40). He lived with his wife, who is the main source of their income along, and he has not worked since the alleged onset date. (Tr. 116). He has a driver's license, but only drives short trips because of the swelling in his legs and his proneness to blood clots. (Tr. 116-17). He worked as a foreman and a vinyl technician, which all entailed lifting 50 or more pounds and standing. (Tr. 118-23; Tr. 126-27).

In 2019, Coleman experienced issues stemming from liver disease. If he sat or stood, he testified that fluid would pool in his legs, resulting in his legs swelling. (Tr. 124). After getting promoted to foreman, he discovered he had cirrhosis of the liver the same week. (Tr. 124). He testified that he wore air casts to reduce the swelling, but they were not prescribed by his doctor. (Tr. 125). He also wore compression socks to keep blood circulation flowing in his legs. (Tr. 132).

Between 2018 to 2019, he was in the hospital on four different occasions for infections as a result of the swelling in his legs. (Tr. 126).

Coleman explained that he also experienced pain in his lower back. (Tr. 130). He saw a surgeon and the surgeon stated that there was nothing they could do for him at the time. (Tr. 130). His physician used to give him injections for his back pain while he was still working, but his physician stopped after Coleman's NASH diagnosis out of concern that a blood vessel might be hit while administering the injection. (Tr. 139). After Coleman stopped receiving injections, he reported that the pain has gotten worse. (Tr. 140). Specifically, he testified that the pain would go down his right leg and the two toes beside his large toe. (Tr. 140).

### 2. *Vocational Expert*

Mark Anderson testified as a vocational expert at the hearing. (Tr. 140-44). He opined that a hypothetical person of Coleman's age and education with the past jobs and the ALJ's proposed limitations would be able to work unskilled work at the sedentary level such as a patcher, touch-up screener, and loader of semiconductor dyes. (Tr.142). The ALJ also posed a second hypothetical with all the same facts as the previous hypothetical, except in addition the individual would require being able to elevate his legs while sitting. (Tr. 143). In response, Anderson indicated that this was not addressed by the *Dictionary of Occupational Titles*. (Tr. 143). Without accommodations, he opined there would be no work if the hypothetical individual needed to elevate their legs at waist level. (Tr. 143). Finally, he stated that employers would tolerate two absences in a month. (Tr. 143).

### D. Relevant Medical Evidence

#### 1. *Liver Disease and Its Complications*

On September 14, 2019, Coleman was admitted to Wooster Community hospital complaining of right leg pain. (Tr. 357-63). On examination, his right leg was swollen and had

5

multiple abrasions. (Tr. 357). Testing did not return any evidence of deep vein thrombosis in his legs. (Tr. 360). The hospital determined that he had sepsis due to cellulitis in his right leg. Coleman requested to home on oral antibiotics and was discharged. (Tr. 360).

On October 2, 2019, Coleman was again admitted to emergency department. (Tr. 369-76). After completing the antibiotics that were prescribed to him at his previous hospital visit, he later experienced swelling in his right foot. (Tr. 369). The hospital determined that he had cellulitis in his right leg. (Tr. 375). Because of Coleman's history of recurrent cellulitis, he was admitted for IV antibiotics. (Tr. 375).

On October 9, 2019, Coleman visited the Wound Healing Center with swelling and an ulcer with the fat layer exposed in his right leg. (Tr. 398-401). The hospital assessed that the recurrent swelling might be due to venous insufficiency and post deep vein thrombosis syndrome. (Tr. 400). On October 16, 25, and 31 of 2019, Coleman had a debridement. (Tr. 814-20; 807-13; 799-806).

On October 17, 2019, Coleman met with Dr. Talal Adhami regarding his cirrhosis. (Tr. 421-22). In the report, Dr. Adhami indicated that both of Coleman's lower extremities were wrapped and had +1 edema. (Tr. 4120).

At examinations on: December 27, 2019; February 21, 2020; May 1, 2020; June 26, 2020; July 10, 2020; and September 4, 2020, Coleman was observed to have pitting edema in his lower extremities. (Tr. 1273; Tr. 1259; Tr. 1243; Tr. 1451; Tr. 1446; Tr. 1434).

### 2. *Back Pain*

On September 24, 2019, a MRI of Coleman's lumbar spine was completed. (Tr. 367-68). The scan indicated a mild right neural foraminal encroachment at L4/5 secondary to tiny disc protrusion, mild narrowing of the central canal, and minor bulging at L5/21 in association with

moderate-sized central/right paracentral disc protrusion impinging upon the thecal sac. (Tr. 367-68).

### 3. *Knee Pain*

On February 18, 2020, Coleman had an MRI of his right knee. (Tr. 1401). The findings stated that he had a new suprapatellar effusion. (Tr. 1401). Dr. Ward's impressions suggested an MRI to exclude internal derangement, a chronic condition that interferes with normal knee function. (Tr. 1401).

On February 19, 2020, Wooster Orthopaedic & Sports Medicine examined Coleman for evaluation of his right knee pain. (Tr. 1405-1408). Upon examination, the physician observed that Coleman's right knee had a moderately large palpable effusion in his right knee and a pitting edema of the right lower leg. (Tr. 1406).

A week later, Dr. Rodney Miller discussed the MRI results with Coleman. The MRI results were consistent with degenerative changes about the medical compartment with chronic undersurface tear of the medial meniscus, bone bruising of the medial femoral condyle, MCL sprain, and large knee effusion. (Tr. 1410). On July 6, 2020, Coleman had a right knee arthroscopy with medial meniscectomy and chondroplasty. (Tr. 1418; Tr. 1510-11). Upon examination on July 20, 2020, Coleman had swelling in his entire right lower extremity. (Tr. 1419).

### IV.    THE ALJ'S DECISION

The ALJ made the following findings relevant to this appeal:

4. The claimant has the following severe impairments: obesity, degenerative disc disease of the lumbar spine, degenerative joint disease of the knees, non-alcoholic steatohepatitis [NASH]/cirrhosis of the liver, depressive disorder, neurodevelopmental disorder (20 CFR 404.1520(c)).

5. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

7

6. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except with the following additional limitations. The claimant can occasionally climb ramps and stairs, but cannot climb ladders, ropes, or scaffolds. The claimant can occasionally balance, stoop, kneel, crouch, and crawl. The claimant cannot work at unprotected heights, near moving mechanical parts, and cannot operate a motor vehicle. The claimant must avoid concentrated exposure to extreme cold, extreme heat, vibration, humidity, wetness, dust, odors, fumes, and other pulmonary irritants. The claimant can perform simple, routine, and repetitive task, and can make simple, work-related decisions. The claimant can tolerate few changes in a routine work setting.

(ECF No. 4, PageID# 32-37).

## V.   LAW AND ANALYSIS

### A.  Standard of Review

The court reviews the Commissioner's final decision to determine whether it was supported by substantial evidence and whether proper legal standards were applied. 42 U.S.C. § 405(g); *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is not a high threshold for sufficiency. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation marks omitted). Even if a preponderance of the evidence supports the claimant's position, the Commissioner's decision still cannot be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ." *O'Brien v. Comm'r of Soc. Sec.*, 819 F. App'x 409, 416 (6th Cir. 2020) (quotation marks omitted). Under this standard, the court cannot decide the facts anew, evaluate credibility, or reweigh the evidence. Jones v. Comm'r of Soc. Sec., 336 F.3d 469, 476 (6th Cir. 2003). And "it is not necessary that this court agree with the Commissioner's findings," so long as it meets this low standard for evidentiary support. Rogers, 486 F.3d at 241. This is so because the Commissioner enjoys a "zone of choice" within which to

decide cases without being second-guessed by a court. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).

Even if substantial evidence supported the ALJ's decision, the court will not uphold that decision when the Commissioner failed to apply proper legal standards, unless the legal error was harmless. *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("[A] decision . . . will not be upheld [when] the SSA fails to follow its own regulations and [when] that error prejudices a claimant on the merits or deprives the claimant of a substantial right."). And the court will not uphold a decision when the Commissioner's reasoning does "not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Charter*, 78 F.3d 305, 307 (7th Cir. 1996)); *accord Shrader v. Astrue*, No. 11-13000, 2012 U.S. Dist. LEXIS 157595 (E.D. Mich. Nov. 1, 2012) ("If relevant evidence is not mentioned, the court cannot determine if it was discounted or merely overlooked.").

### B.  Standard for Disability

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to supplemental-security income or disability-insurance benefits: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform his past relevant work in light of his residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she

is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has

the burden of proof in steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529

(6th Cir. 1997). The burden shifts to the Commissioner at step five to establish whether the

claimant has the residual functional capacity to perform available work in the national economy.

*Id.*

### C.  Discussion

Coleman raises three issues on appeal. First, Coleman asserts that ALJ's decision was

constitutionally defective because the appointment of Andrew Saul as Commissioner of the Social

Security Administration violated the separation of powers. Second, Coleman argues that the ALJ

erred when he failed to include the need to elevate legs in the RFC as necessary due to Coleman's

pitting edema and failed to find the opinions of Dr.  Yonan persuasive. Third, Coleman contends

that the ALJ failed to properly consider Coleman's symptoms, including pain, in accordance with

Social Security Ruling 16-3p.

### *1.  Separation of Powers Violation*

Coleman argues that the ALJ's decision was constitutionally defective because the ALJ

derived her authority from Andrew Saul, whose appointment as Commissioner of the Social

Security Administration violated the separation of powers. For the reasons that follow, Coleman's

challenge to the constitutionally of the ALJ's decision lacks merit.

Initially, I note that Coleman's complaint does not include any constitutional claims. (ECF

Doc. No. 1). Rule 8(a)(2) of the Federal Rules of Civil Procedure provides that a complaint must

contain a "short and plain statement of the claim showing that the pleader is entitled to relief[.]" A

complaint need not provide "detailed factual allegations," but it "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell v.*

*Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At a minimum, a complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]" Id. (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

In his merit brief, Coleman grounds his constitutional claim in *Seila Law LLC v. CFPB*, 140 S. Ct. 2183 (2020), decided in June 2020, but failed to give notice of the claim when he filed his complaint in March 2022. Accordingly, his constitutional claim – advanced for the first time in his merit brief (ECF Doc. No. 9-1) – is procedurally improper. *See, e.g., Hawes v. Comm'r of Soc. Sec. Admin.*, No. 5:20-CV-02848-DAR, 2022 WL 2346998, at *7 (N.D. Ohio Apr. 15, 2022), *report and recommendation adopted sub nom. Hawes v. Kijakazi*, No. 5:20-CV-02848, 2022 WL 2342642 (N.D. Ohio June 28, 2022).

Even if considered on its merits, however, Coleman's constitutional claim fails. Andrew Saul became Commissioner of the Social Security Administration on June 17, 2019, pursuant to 42 U.S.C. § 902(a). *See* Social Security Administration, Executive Bios, Andrew Saul, https://www.ssa.gov/ndf/documents/SSA%20Executive%20Bios-11182020.pdf (last visited Sept. 12, 2022). Section 902(a)(3) provides that "[a]n individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office." *Id.* The parties agree that portion of § 902(a)(3) violates the separation of powers because it limits the President's authority to remove the Commissioner as the head of an executive agency. (ECF Doc. 8 at 2; ECF Doc. 7 at 9); *see also Seila Law LLC*, 140 S. Ct. at 2197 (statutory restriction on the President's ability to remove the head of an agency "for inefficiency, neglect, or malfeasance" violates the separation of powers and is unconstitutional); *Collins v. Yellen*, 141 S. Ct. 1761, 1787-89 (2021) (statutory restriction on the President's ability to remove

the head of an agency (e.g., "for cause," "neglect of duty, or malfeasance in office") violates the separation of powers and is unconstitutional).

In *Seila Law*, the Supreme Court held that a statutory provision allowing the President to remove the Director of the Consumer Financial Protection Board ("CFPB") only for "inefficiency, neglect of duty, or malfeasance of office," 12 U.S.C. § 5491(c)(3), violated the separation of powers doctrine by insulating the director from removal by the President. 140 S. Ct. at 2197. The Court also found that the unconstitutional removal provision was severable from the other provisions of the relevant statute, thereby maintaining the CFPB intact as an agency. *Id.* at 2208, 2211. The Supreme Court did not discuss what a plaintiff must show to obtain relief when challenging actions taken by the head of an agency who derived powers from a statute that included an unconstitutional removal provision. The Court addressed this issue in *Collins v. Yellen*.

In *Collins*, the Supreme Court considered a similar statute governing the removal of Directors of the Federal Housing Finance Agency ("FHFA"). The majority held that, "[a]lthough the statute unconstitutionally limited the President's authority to remove the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by FHFA . . . as void." 141 S. Ct. at 1787 (emphasis in original).

The *Collins* Court further found "there is no basis for concluding that any head of the FHFA lacked the authority to carry out the functions of the office" because the removal restriction was unconstitutional. *Id.* at 1788; *id.* at 1778 n.23 (citing *Seila Law*, 140 S. Ct. at 2207-11) ("unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office, including implementing the third amendment"). Rather, to obtain reversal of an agency decision, a plaintiff would need to demonstrate "compensable harm"

flowing from the unconstitutional removal clause. *Id*. at 1788-89. The Supreme Court offered examples of situations where unconstitutional removal restrictions could inflict compensable harm:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the status did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id*. at 1789.

Here, Coleman claims he did not receive a valid administrative process because the ALJ's authority to make disability determinations was derived from a Commissioner who was subject to an unconstitutional removal provision. (ECF Doc. 7 at 9). As in *Collins*, the existence of an unconstitutional removal provision did not strip Commissioner Saul of his authority to carry out the functions of his office, including the authority to delegate disability determinations to ALJs and to implement changes to Agency regulations. Without Coleman showing that § 902(a)(3)'s removal restriction inflicted specific, compensable harm on him, remand for a *de novo* hearing is not available to him.

Moreover, Coleman does not address the fact that the specific ALJ who presided over his case – Judge Beatty – was not appointed by a Commissioner subject to § 902(a)(3)'s removal restriction, but rather was ratified by an Acting Commissioner who was not tenure-protected. Because then-Acting Commissioner Berryhill served pursuant to provisions of the Federal Vacancies Reform Act, 5 U.S.C. §§ 3345-3349c, her appointment was not subject to the same constitutional deficiencies as Commissioner Saul. See 5 U.S.C. § 3346(a)(1). Then-Acting Commissioner Berryhill had no statutory tenure protections. See 42 U.S.C. § 902(b)(4); see also Collins, 141 S. Ct. at 1782-83 (citing 12 U.S.C. § 4512(f)) (noting that FHFA's Acting Director

was removable at-will because the relevant subsection "does not include any removal restriction. Nor does it cross-reference the earlier restriction on the removal of a confirmed Director."); *United States v. Eaton*, 169 U.S. 331, 343 (1898) ("Because the subordinate officer is charged with the performance of the duty of the superior for a limited time, and under special and temporary conditions, he is not thereby transformed into the superior and permanent official. To so hold would render void any and every delegation of power to an inferior to perform under any circumstances or exigency the duties of a superior officer, and the discharge of administrative duties would be seriously hindered.").

Because then-Acting Commissioner Berryhill was not the "superior and permanent official" as a confirmed director, she was removable at-will; thus, there is no nexus between then-Acting Commissioner Berryhill's ratification of Judge Beatty's appointment and the unconstitutional provisions of § 902(a)(3). As a result, I conclude that Coleman has not shown that then-Acting Director Berryhill or Judge Beatty lacked authority to carry out the functions of their respective offices due to the constitutional defect in § 902(a)(3). *See Collins*, 141 S. Ct. at 1788 n.23 (noting that "unlawfulness of the removal provision does not strip the Director of the power to undertake the other responsibilities of his office . . . ").

Other federal courts in this judicial district, this state, and across the country, have concluded that the allegedly unconstitutional appointment of Andrew Saul does not require remand. *See, e.g., Katrina R. v. Comm'r of Soc. Sec.*, No. 2:21-CV-4276, 2022 WL 190055, at *5 (S.D. Ohio Jan. 21, 2022) (collecting cases); *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754, at *9 (N.D. Ohio Dec. 22, 2021). I similarly decline to recommend remand on this basis. Thus, even if Coleman's constitutional claim was procedurally proper – which it is not – he has not articulated a specific, compensable harm that he sustained as a result of the

14

unconstitutional removal provision in § 902(a)(3). As a result, Coleman's first assignment of error lacks merit.

## 2. The ALJ Reasonably Assessed Plaintiff's Residual Functional Capacity.

Next, Coleman argues that the ALJ's RFC was not supported by substantial evidence because he failed to properly evaluate the evidence documenting the combination of his severe impairments. He asserts that these impairments prevent him from engaging in substantial gainful activity on a sustained and full-time basis. For the reasons that follow, Coleman's argument lacks merit.

### a. <u>Residual Functional Capacity – Leg Lifting Limitation</u>

Coleman argues that the ALJ committed a harmful error by failing to include Coleman's medically documented restriction of needing to elevate his legs while sitting to reduce swelling in his RFC analysis. (ECF Doc. 7 at 15). Specifically, Coleman points to his medical treatment history for different medical issues, including cellulitis, pitting edema, NASH, swelling, and cirrhosis of the liver. (ECF Doc. 7 at 13-14). Further, he cites to his hearing testimony that he had been hospitalized four times in 2019, but only had three infections since he stopped working. (ECF Doc. 7 at 14; Tr. 126-127). He notes that during the day he laid on the couch with his legs above his chest to help with the swelling in his lower extremities. (ECF Doc. 7 at 14; Tr. 134). Moreover, Coleman asserts that he had to use an air cast if he had to go to the doctor and knew he would be sitting for more than 30 minutes. (ECF Doc. 7 at 14; Tr. 134). Finally, he points to the vocational expert's testimony that if a person needed to elevate his legs while sitting, it would be an accommodation which would preclude work. (ECF Doc. 7 at 14; Tr. 143). Coleman asserts that because elevating his legs while sitting was necessary to reduce swelling, there would be no

substantial gainful activity which he could perform on a full-time and sustained basis. (ECF Doc. 7 at 14-15).

The Commissioner contends that the ALJ did not commit any error by failing to include the need for Coleman to elevate his legs in determining Coleman's RFC. (ECF Doc. 8 at 12). The Commissioner argues that Plaintiff's claim that he needed to elevate his legs to reduce swelling related to his liver impairments is not supported by any opinion evidence in the record. (ECF Doc. 8 at 12). The Commissioner asserts that neither the state agency reviewing physician nor Coleman's own pain management physician found that Coleman needed to elevate his legs as part of his workplace limitations. (ECF Doc. 8 at 12)(citing Tr. 156-58, 169-70, 252, 1279-81). Further, the Commissioner argues that there is no medical source in the record suggesting that Plaintiff was required to elevate his legs. (ECF Doc. 8 at 12). Because the Sixth Circuit has found that an ALJ is not required to include a limitation for elevating legs in an RFC where no medical expert has opined that such a limitation is necessary, the Commissioner asserts that Coleman's argument should be rejected. (ECF Doc. 8 at 12) (citing *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 170)(6th Cir. 2016)).

At Step Four of the sequential analysis, the ALJ must determine a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC is an assessment of a claimant's ability to do work despite her impairments. *Walton v. Astrue*, 773 F. Supp. 2d 742, 747 (N.D. Ohio 2011) (citing 20 C.F.R. § 404.1545(a)(1) and SSR 96-8p, 1996 SSR LEXIS 5 (July 2, 1996)). "In assessing RFC, the [ALJ] must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 SSR LEXIS 5. Relevant evidence includes a claimant's medical history, medical

signs, laboratory findings, and statements about how the symptoms affect the claimant. 20 C.F.R. §§ 404.1529(a), 416.929(a); see also SSR 96-8p, 1996 SSR LEXIS 5.

The Sixth Circuit has held that an ALJ was not required to include in his RFC finding a limitation that a claimant was required to elevate her legs. *Sorrell v. Comm'r of Soc. Sec.*, 656 F. App'x 162, 170 (6th Cir. 2016). The Sixth Circuit explained that "[i]t [was] clear from the record that the ALJ considered [the claimant's leg] swelling and the need for her to elevate her legs." *Id.* Further, although "some treatment records mentioned leg elevation as a treatment for edema, no physician indicated that [the claimant's] edema caused work-related functional limitations, and no medical expert opined that [the claimant] would need to elevate her feet to waist level during the workday or even every day." *Id.* Moreover, the claimant's own testimony indicated that her leg swelling was intermittent and that her medication helped reduce swelling. *Id*. Because the instant case presents a fact pattern similar to *Sorrell*, the same result should be reached here.

The ALJ followed proper legal standards in deciding not to include a leg-lifting limitation in Coleman's RFC. 42 U.S.C. §§ 405(g), 1383(c)(3); *Rogers*, 486 F.3d at 241. The ALJ complied with the regulations by considering all of Coleman's impairments in light of the medical and other evidence. 20 C.F.R. §§ 404.1520(e), 416.92(e); SSR 96-8p, 1996 SSR LEXIS 5. In doing so, the ALJ expressly discussed Coleman's leg problems, including his swelling resulting from his liver problems and his cellulitis. (Tr. 18-19). Further, the ALJ was not required to accept Coleman's subjective complaints, but properly discounted them because his complaints regarding the intensity, persistence, and limiting effects of his symptoms were inconsistent with the medical and other evidence in the record. (Tr. 19); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475-76 (6th Cir. 2003); SSR 16-3p, 2016 SSR LEXIS 4 *15 (Oct. 25, 2017) ("We will consider an individual's statements about the intensity, persistence, and limiting effects of symptoms, and we will evaluate

17

whether the statements are consistent with objective medical evidence and the other evidence."). Thus, the ALJ followed proper legal standards in evaluating Coleman's RFC and in declining to include a leg-propping limitation.

Substantial evidence also supported the ALJ's decision to not include a leg-lifting limitation in Coleman's RFC. As Coleman points out, it is medically documented that he had swelling in his lower extremities. (Tr. 421, 1243, 1259, 1273, 1406, 1412, 1434, 1446, 1451). Coleman testified that he needed to elevate his legs to reduce swelling related to his liver impairments (Tr. 134), but no medical opinion record supports that this was a workplace limitation. In fact, neither the state agency medical consultants, Drs. Mendonca and Hughes, nor Coleman's own pain management physician, Dr. Yonan, found that Coleman needed to elevate his legs as part of his workplace limitations. (*See generally* Tr. 156-158, 169-70, 252, 1279-81). In the absence of any evidence that a physician specifically indicated that Coleman would need to lift his legs during the workday, the ALJ was neither required to include a leg-lifting limitation in the RFC nor give it any extensive discussion in the record. *Sorrell*, 656 F. App'x at 170. Accordingly, Coleman's argument lacks merit.

### b. **RFC - Dr. Yonan's Medical Opinion**

Coleman asserts that the ALJ failed to assess Dr. Yonan's medical opinion in accordance with the regulation at 20 C.F.R. § 404.1520c. (ECF Doc. 7 at 14). In this matter, the ALJ found Dr. Yonan's medical opinion unpersuasive because it was not supported by any clear explanation of what evidence informed his conclusion and addressed vocational concerns outside of the doctor's expertise. (Tr. 21). Coleman contends that the treating records and the testimony support and were consistent with the opinions that the ALJ found to be unpersuasive. (ECF Doc. at 16-17). Thus, as Plaintiff argues, the record "failed to support the ALJ's erroneous conclusion that the

opinion of the treating sources was not supported by the evidence in this matter." (ECF Doc. at 17). Claiming that the ALJ did not adequately explain his findings regarding the supportability, consistency, and persuasiveness of the treating source, Coleman asserts that the matter should be remanded. (ECF Doc. 7 at 18).

The Commissioner responds that the ALJ "reasonably found Dr. Yonan's opinion unpersuasive." (ECF Doc. 8 at 13). Specifically, the Commissioner contends that the ALJ reasonably found Dr. Yonan's opinion about Coleman's inability to work to be unpersuasive because it is consistent with Sixth Circuit law holding that the ultimate issue of disability is an opinion reserved to the Commissioner. (ECF Doc. 8 at 13). Further, as to Dr. Yonan's remaining restrictions—limiting Plaintiff to lifting no more than 10 pounds and accounting for him being unable to work for 24-48 hours each month due to medical flare-ups, the Commissioner asserts that any error made by the ALJ was harmless. (ECF Doc. 8 at 14). Although the Commissioner concedes that the ALJ did not discuss the consistency of Dr. Yonan's evidence with the evidence in the record, any error was harmless because the ALJ limited Coleman to sedentary work, which accounts for Dr. Yonan's proposed lifting restriction. (ECF Doc. 8 at 14). Accordingly, the Commissioner asserts that the ALJ's RFC determination accounted for all of Dr. Yonan's proposed limitations. (ECF Doc. 8 at 14).

Since Coleman's claim was filed after March 27, 2017, the Social Security Administration's new regulations ("Revised Regulations") for evaluation of medical opinion evidence apply to this claim. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. § 404.1520c.

Under the Revised Regulations, the Commissioner will not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative

19

medical findings, including those from your medical sources." 20 C.F.R. § 416.920c(a). Rather, the Commissioner shall "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the factors set forth in the regulations: (1) supportability; (2) consistency; (3) relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; (4) specialization; and (5) other factors, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 416.920c(a), (c)(1)-(5). The Revised Regulations make clear that supportability and consistency are the most important factors for evaluation medical source opinions. 20 C.F.R. § 416.920c(a).

The Revised Regulations also changed the articulation required by ALJs in their consideration of medical opinions. The new articulation requirements are as follows:

(1) Source-level articulation. Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually.

(2) Most important factors. The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision. We may, but

are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record.

(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue. When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. § 416.920c(b)(1)-(3).

"Although the regulations eliminate the 'physician hierarchy,' deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" *Ryan L.F. v. Comm'r of Soc. Sec.*, No. 6:18-cv-01958-BR, 2019 WL 6468560, at *4 (D. Ore. Dec. 2, 2019) (quoting 20 C.F.R. §§ 404.1520c(a) & (b)(1), 416.920c(a) & (b)(1)) (alterations in original). A reviewing court "evaluates whether the ALJ properly considered the factors as set forth in the regulations to determine the persuasiveness of a medical opinion." *Id.*

In support of his argument, Coleman cites a letter that Dr. Yonan wrote in September 2019 stating that Coleman was experiencing generalized pain and severe generalized fatigue in spite of his provided medical regimen. (ECF Doc. 7 at 16; Tr. 252). Dr. Yonan opined that Coleman would be unable to work for three months. (Tr. 252). In November 2019, Dr. Yonan filled out a form stating that Coleman could not lift over ten pounds and would have a medical flare-up at least once a month which would last 24 to 48 hours and prevent him from standing, sitting, or bending. (Tr. 1279-81). In this form and a medical questionnaire filled later that month, Dr. Yonan indicated that Coleman would not be able to work at that time. (Tr. 461, 1281).

21

The ALJ provided a sufficiently clear and adequately supported reason for discounting *some* of the limitations in Dr. Yonan's opinion. Regarding Dr. Yonan's statement about Coleman's inability to work, whether a claimant would be unable to work full-time is an issue reserved to the Commissioner. (Tr. 21). The Sixth Circuit has held that the opinion regarding the ultimate issue of disability is not a "medical opinion" because it is an opinion reserved to the Commissioner. *Bass v. McMahon*, 449 F.3d 506, 511 (6th Cir. 2007) ("the conclusion of disability is reserved to the Secretary"); *Tharp v. Comm'r of Soc. Sec.*, Case No. 1:21-135, 2022 WL 2195056, at *23 (N.D. Ohio April 11, 2022).

Th ALJ's explanation is wanting, however, with respect to Dr. Yonan's remaining restriction, limiting Coleman to lifting no more than 10 pounds and accounting for him being unable to work for 24-48 hours each month due to medical flare-ups. As the Commissioner concedes, the ALJ did not discuss the consistency of Dr. Yonan's statements with the evidence in the record. (ECF Doc. 8 at 14). The only portions of the ALJ's analysis that could be read as pertaining to Dr. Yonan's assessed limitations would be the ALJ's blanket assertion that Dr. Yonan's opinion was "not supported by any clear expalanation [*sic*] of what evidence informed this conclusion." (Tr. 21). In his discussion of Dr. Yonan's opinion, the ALJ did not identify Dr. Yonan's findings, never explained what about those finding that he found to be inconsistent, nor did the ALJ provide any further explanation elsewhere in the decision. (*See* Tr. 21). And in the paragraph immediately following, the ALJ forges ahead to conclude that the RFC assessment is supported by the objective evidence of the record. (Tr. 21-22). The ALJ's lack of a meaningful explanation for why he found unpersuasive Dr. Yonan's opinion on Coleman's lifting limitations constitutes a failure to articulate how he considered the consistency and supportability of Dr. Yonan's opinion on these limitations in terms sufficient to allow for meaningful review. 20 C.F.R.

§ 416.920c(b); *see also* SSR 98-6, 1996 SSR LEXIS 5, at *20 (July 2, 1996) ("If the RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted"). The Commissioner contends that the ALJ's exclusion was harmless because Dr. Yonan's proposed lifting restriction was accounted for when the ALJ limited Coleman to sedentary work. (ECF Doc. 8 at 14).

Nevertheless, I recommend that the court find the ALJ's articulation error was harmless. *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 654 (6th Cir. 2009). An error in the ALJ's evaluation of the opinion evidence may be harmless in one of three circumstances: (i) when the opinion was "so patently deficient that the Commissioner could not possibly credit it"; (ii) when the Commissioner made findings consistent with the opinion; or (iii) the Commissioner otherwise met the goals of the regulations by attacking the supportability or consistency of the opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004); *see also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010).[1]

The second circumstance likely applies here. As stated above, a legal error can be deemed harmless "if the Commissioner … makes findings consistent with the opinion." *Cole v. Astrue*, 661 F.3d 931, 940 (6th Cir. 2011) (further internal quotations and citation omitted). Although the opinion did not directly discuss the limitations proposed by Dr. Yonan such as Coleman's lifting restriction of no more than 10 pounds and medical flare-ups that would prevent Coleman from working once or twice a month, it appears that these limitations were incorporated into the ALJ's RFC findings. Specifically, the ALJ did limit Coleman to sedentary work. (Tr. 18). "Sedentary

---

[1] Although the harmless-error analysis articulated in *Wilson* concerned the pre-March 27, 2017 regulations, district courts within this circuit have applied that analysis to the post-March 27, 2017 regulations. *See Hickman v. Comm'r of Soc. Sec.*, No. 2:20-cv-6030, 2021 U.S. Dist. LEXIS 215187, at *14 n.5 (S.D. Ohio Nov. 8, 2021); *Vaughn v. Comm'r of Soc. Sec.*, No. 20-cv-1119, 2021 U.S. Dist. LEXIS 134907, at *33 n.8 (W.D. Tenn. July 20, 2021); *Burba Comm'r of Soc. Sec.*, No. 1:19-CV-905, 2020 U.S. Dist. LEXIS 179252, at *12 (N.D. Ohio Sept. 29, 2020).

work" is defined as work that involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a). And with respect to Dr. Yonan's opinion that Coleman may miss 24 to 48 hours a month due to medical flare-ups, the vocational expert testified that a hypothetical worker with Coleman's RFC would still be able to perform the jobs set forth in the ALJ's decision if he missed two days of work each month. (Tr. 141-43). Setting aside Dr. Yonan's improper opinions regarding Coleman's inability to work, the ALJ's RFC was consistent with the remaining objective limitations opined by Dr. Yonan. Accordingly, I believe the ALJ's failure to apply the correct legal standards to be a "harmless error."

### c.  Substantial, Gainful Employment

Finally, Coleman argues that, even if the ALJ correctly determined that he was capable of performing some daily activities, the evidence did not show that his symptoms were not disability. (ECF Doc. 7 at 18). He contends that the ALJ erred when he failed to consider the combination of Coleman's impairments and find that he was unable to engage in full-time sustained work activity. (ECF Doc. 7 at 18).

Coleman's argument lacks merit. Substantial evidence supports the ALJ's determination that Coleman was not disabled and could perform some form of substantial, gainful activity. For example, the ALJ did consider that Coleman's primary medical condition is NASH/liver cirrhosis, which he determined was the likely cause of the reported swelling and infections in the lower extremities with severe obesity also likely playing an exacerbating role. (Tr. 19). However, he determined that the evidence in the record did not support the severity of symptoms alleged. (Tr. 19). For example, despite Coleman's complaints of swelling and occlusion in the lower extremities, testing for deep vein thrombosis came back negative. (Tr. 364).  And while Coleman

testified that he used air casts, he admitted that it was not prescribed. (Tr. 124-26). Also, despite Coleman's history of infections and swelling in his legs, the medical records did not demonstrate a sign of acute strength loss, indicating that he still retained some ability to stand and walk for a portion of a typical workday. (Tr. 19; Tr. 316). Further, while Coleman developed recurrent cellulitis between 2018 to 2019, he determined that the infections decreased after October 2019. (Tr. 19). Also, the ALJ found that there was no clear reason from the record to suggest that sedentary work would increase Coleman's infections. (Tr. 19) (citing Tr. 1179). Acknowledging that Coleman's liver complications were very serious, the ALJ nonetheless concluded that the record did not reflect signs to support Coleman's claims of constant swelling, chronic infections, and acute weakness. (Tr. 19).

In addition, the ALJ did discuss Coleman's complaints about lower back pain. As noted, on September 24, 2019, an MRI of the lumbar spine showed mild right neural foramina encroachment at L4-5 secondary to a tiny disc protrusion secondary at one level and mild bulging disc at L5-S1 with moderate disc protrusion causing only mild narrowing of the central canal at another level. (Tr. 19) (citing Tr. 367-68). While the ALJ noted that such findings were consistent with the presence of some lower back pain (Tr. 19), the ALJ noted that none of the findings were particularly acute in nature and did not necessarily indicate acute complications in weight-bearing and exertional tolerances because of pain. (Tr. 19). Further, Coleman's physical status examinations had shown that Coleman had retained full strength in both of his ankles, and had only slight strength loss in the right hip on flexion and extension of the knees. (Tr. 19) (citing Tr. 316).

The ALJ even considered complications relating to osteoarthritis in Coleman's right knee. (Tr. 20). He addressed Coleman's MRI taken on February 20, 2020 that showed moderate to severe

chondral erosion of the medical compartment and tearing of the medical meniscus. (Tr. 20; Tr. 1402-03). He noted that these findings suggested some pain in the right knee, especially with prolonged weight bearing activity. (Tr. 20). While the record did reflect some serious arthritic changes affecting the right knee, signs of Coleman's actual functioning levels indicated that he still had an ability to still engage in some standing and walking. (Tr. 20). In addition, he noted that Coleman had not been prescribed an ambulatory aid. (Tr. 20). The ALJ also indicated no reason for serious pain or tightness to build up in the right knee when seated. (Tr. 20). Thus, the ALJ determined that the reduced range of sedentary work noted in his findings would reasonably account for complications associated with the impairment to Coleman's right knee. (Tr. 20).

In sum, the ALJ's written decision appears to show that he did consider all of Coleman's impairments, including those caused by his liver symptoms. To the extent that Coleman asserts that the ALJ erroneously found his ability to perform some activities meant he was not disabled, he fails to cite in his merits brief or reply brief where the ALJ has specifically determined that Coleman's ability to perform some activities meant that he was not disabled. (*See generally* ECF Doc. 7 at 12-18). Accordingly, Coleman's argument lacks merit.

### 3. The ALJ's Evaluation of Coleman's Symptoms was Supported by Substantial Evidence.

In his final assignment of error, Coleman argues that the ALJ's credibility determination violated Social Security Ruling 16-3p and was, therefore, not supported by substantial evidence. In determining whether a claimant is disabled, the ALJ considers all of the claimant's symptoms, including pain, and the extent to which the symptoms can reasonably be accepted as consistent with the objective evidence in the record. SSR 16-3P, 2017 WL 5180304, at *2. The ALJ is required to use a two step-process. *Id*. at *3. First, the ALJ determines whether the individual has

26

a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms. *Id.* Second, the ALJ evaluates the intensity, persistence, and limiting effects of a claimant's symptoms. *Id.* at *4. In so doing, the ALJ should consider the evidence provided and, when relevant, seven factors listed in SSR 16-3p. The factors are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate pain or symptoms; (5) treatment other than medication for the relief of pain or symptoms; (6) any other measures used to relieve pain or symptoms; and (7) any other factors concerning an individual's functional limitations and restrictions due to pain and other symptoms. Id. at *7–8. The ALJ need not discuss all seven factors but should show that he considered the relevant evidence*. See Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005).

A claimant's subjective complaints "can support a claim for disability[ ] if there is also objective medical evidence of an underlying medical condition in the record." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (citations omitted). An ALJ, however, "is not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant when making a determination of disability." *Id.* at 476 (citations omitted). "[I]f an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence and the other evidence, [the ALJ] will determine that the individual's symptoms are less likely to reduce his or her capacities to perform work-related activities or abilities to function independently, appropriately, and effectively in an age-appropriate manner." SSR 16-3P, 2017 WL 5180304, at *8.

The ALJ's determination of credibility is given "great weight" because he, unlike the Court, has the opportunity to observe the claimant's demeanor while testifying. *Jones*, 336 F.3d at 476 (citations omitted). However, the ALJ's "decision must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2017 WL 5180304, at \*10; *see also Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir. 1994) ("If an ALJ rejects a claimant's testimony as incredible, he must clearly state his reasons for doing so.").

Although the ALJ distributed his credibility discussion of the seven factors set forth in SSR 16-3p throughout the decision rather than gathering the analysis in a single section, the Court considers the ALJ's decision as a whole. *See Buckhannon v. Astrue*, 368 Fed. App'x 674, 678-79 ("[W]e read the ALJ's decision as a whole and with common sense."). With respect to the location, duration, frequency, and intensity of pain or other symptoms, the ALJ noted that Coleman claimed he had recurrent edema and pain in his lower extremities. Yet, the ALJ pointed out that evidence in the record indicated that the symptoms' severity was not as Coleman alleged. For example, testing for deep vein thrombosis came back negative. (Tr. 364). And despite his history of infections and swelling in the lower extremities, Coleman did not present with signs of acute strength loss his lower extremities. (Tr. 19). With respect to precipitating and aggravating factors, the ALJ stated that Coleman reported difficulties with prolonged standing, walking, and weight bearing activity due to lower back pain. (Tr. 18).  The ALJ even took into account how Coleman's obesity might be affecting and making worse his existing symptoms. (Tr. 20). With respect to treatment, the ALJ specifically discussed Coleman's testimony that he was using an air cast to help with the lower extremity swelling but noted that Coleman admitted (and the record reflected) that

such use was unprescribed. (Tr. 19) (citing Tr. 124-25). Further, he discussed Coleman's use of compression socks and stated how it seemed to have some benefit. (Tr. 19). Despite Coleman's claims that the ALJ failed to "articulate any supportable rationale beyond the boilerplate paragraph," it appears from the entirety of the ALJ's decision that he did apply the criteria of SSR 16-3p. (ECF Doc. 7 at 23).

The ALJ engaged in a sufficient credibility analysis and was not required to analyze all seven factors, but only those factors germane to the alleged symptoms. *See, e.g., Cross v. Comm'r of Soc. Sec.*, 373 F. Supp.2d 724, 733 (N.D. Ohio 2005) (Baughman, M.J.) ("The ALJ need not analyze all seven factors identified in the regulation but should provide enough assessment to assure a reviewing court that he or she considered all relevant evidence"); *see also Wolfe v. Colvin*, No. 4:15-CV-01819, 2016 WL 2736179, at *10 (N.D. Ohio May 11, 2016) (Vecchiarelli, M.J.); *Allen v. Astrue*, No. 5:11CV1095, 2012 WL 1142480, at *9 (N.D. Ohio Apr. 4, 2012) (White, M.J.). SSR 16-3p itself states that where "there is no information in the evidence of record regarding one of the factors, we will not discuss that specific factor," but rather will only "discuss the factors pertinent to the evidence of record." SSR 16-3p, 2017 WL 5180304 at *8. Given the high level of deference owed to an ALJ's findings with respect to the evaluation of a claimant's alleged symptoms and resulting limitations, the Court cannot the ALJ's credibility analysis was deficient under the circumstances presented herein. Accordingly, Coleman's third assignment of error is without merit.

## VI.     RECOMMENDATION

Based on the foregoing, it is RECOMMENDED that the Court OVERRULE Coleman's Statement of Errors and AFFIRM the Commissioner's decision.

Dated: September 22, 2022

*s/ Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
United States Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

> **Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure.** Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the

magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. See *United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).